Case number 14-5939. Michael Ward et al. v. Knox County Board of Education et al. Oral argument not to proceed. Keith Wasielowski for the appellant. You may proceed. We received your motion. It was your motion, right? Yes, Your Honor. And we have decided to deny it. It was pretty untimely. But we do have before us the portions of the record that contain the pictures of the coupons. I think they're page ID 1664-76. And if you want to refer to those, we have them in front of us. Certainly, Your Honor. Your Honor has already found them. And I think that's more than fair that all of those books are in the record. And we certainly understand where you're going with the motion, sir. Please proceed. Good morning, Your Honors. May it please the Court. I'm Keith Wasielowski here on behalf of the appellants. Michael Scott Ward, Print Venture, Inc. And we do fundraising, collectively Faradona Communications. Essentially, it is a David v. Goliath-style intellectual property claim here. Goliath. Goliath would be Knox County. And the taxpayer-funded school system involved that we allege is infringing upon the intellectual property rights of Faradona Communications. And specifically, we've got claims involved for trademark infringement, trade dress infringement, and copyright infringement. In proceedings... Do they all involve confusion? They certainly do, and there is certainly evidence... Is it the people who make the donations who are confused? Or is it the people who are advertising using this method that are confused? All of the above, Your Honor. I don't see... I don't understand. Taking them one at a time, I'm not seeing how either one of them is confused. Certainly. First, we can talk about the merchant community. Merchant community. When the person comes in and says, I want to sell you these, he knows that it's either this county or that... He knows who's asking for it, right? Well, what happened in when the... Is that right? No, Your Honor, it's... Does he have a confusion as to who it is that's coming in and asking to advertise? There is some blurring of the lines here, Your Honor, actually. And this relates back to a February 2010 letter that was sent out communicating to the merchant community by Knox County. They said in that letter to the merchant community that they were rebranding school coupons. The merchant knows it's Knox County. They don't think it's somebody else, right? Well, in the prior years, there was a collaboration between Knox County and Faradona Communications. So the two had presented a unified front using the various trademarks and trade dress. And I understand how that might lead you to say that there was some unfairness here in switching whoever they had doing this for them. But I'm just not seeing how these merchants are being confused. You know what's going on, right? There's a letter which explains to them what's going on. Actually... A letter. It's not like these coupons are confusing as to what's being offered. I mean, if it's $10 off at a restaurant or something like that, that's not being confused, right? The evidence of the confusion for a merchant actually can be found specifically with Farragut Putt-Putt, where actually what ended up happening is once the split happened, and both Faradona and Knox County were soliciting Farragut Putt-Putt to participate in their now competing books, even though the relationship had originally been through Faradona, Farragut Putt-Putt wanted nothing to do with them anymore. In fact, it was very much a confrontational type of exchange that was had with them, encouraged by Knox County, as Knox County was inducing Farragut Putt-Putt to participate in its book but not in the competing book from Knox County. And Putt-Putt was upset about that. Putt-Putt was very upset. They thought that they had been deceived. Well, they were of the impression that they had been approached first when the competition happened by Faradona, and they were ready to sign the line until they had heard from Knox County. And, well, now that we've gotten this information from you, we're upset. We're thinking that we are being deceived, that here they are coming to us saying that there was a prior relationship, and now you're coming to us, and that entirely shows confusion. Another way in which confusion happened, Your Honor. I'm not confused about confusion. Certainly. Focus on the distinctive. Focus on the distinctive element of this. I mean, we've got these things in front of us. What's so distinctive? Certainly, Your Honor. I think maybe behind Judge Rogers' question is an instinct I have about this, which is every community has these things. This is not an unusual name, school, coupon. I mean, your idea that, oh, people might think this is vouchers to pay for the school sounds borderline preposterous. I think most people understand school coupons. This is what this relates to. So there's nothing unusual about the name. So where's the distinctiveness? What element of the design? Certainly. And first, dealing with school coupons. Again, it is our linguistic argument that the coupons modify school. In fact, there are three different sort of levels of distinctiveness in terms of whether it is merely descriptive, whether it is totally generic, or whether it has a certain intrinsic distinctiveness. Really, the district court found below in the middle ground that it could acquire. You tell me what's distinctive. I just want to hear what's distinctive. Forget the test. Just tell me. Sure. I'll look at it and I'll go, okay, I see what you're saying, or I'll say I don't think so. Certainly. These involve a little bit of difference because I've got both trade dress and trademark claims. On the trade dress, what you see there in terms of the presentation of the front cover of the booklet, for example, logo in middle, sponsors around siding, you've got the picture of the little girl on the front who happened to be a top seller from the prior year. You've got certain bold or sort of the color fade across there. There is a uniform type of presentation shown on the cover of the book from year to year of school coupons that is very different from the kind of presentation that you see in other years from other varying books. Some of them have hand drawings of pictures. Some of them have things that look like checks. It is in that uniform. I think every single one of those things are the kind of things you would expect here. Some pick some. Some pick others. There's maybe a hundred options. Some sometimes pick those. Sometimes others pick the others. But there's nothing unique or distinctive about it. It's school related, so you're going to see school youth type things. Your Honor, these particular books have been in the community and using that particular branding for well on about 15 years. They had sold over 150,000 books per year. They were consistently, it was the main fundraiser of several school districts in the area. It merited news coverage on a yearly basis when they were about to be released. This was something that was known within the community as the premier fundraising activity for the school system. Mr. Ward himself was essentially lauded as a hero at the time for being the guy that developed this and was out there really pushing it. Deeper within the books, if you were to look coupon per coupon, I believe there are a few examples in, I believe it's exhibit one that were attached with the original complaint. What you see is a particular layout to the coupon in terms of color styles, in terms of text and language. And as you go from coupon to coupon within the school coupons book, you'd find that you'd have a relatively uniform presentation across years for that. And that same presentation, unlike, say, quarter page tear-offs or unlike check designs, things that are graphically clearly different, what we had was Knox County essentially mimicking the design and branding that had been developed over the years by Faradona Communications. Including by using the phrase school coupons? Yes, Your Honor. It is on the supplemental register, so there is some degree of, for that mark. I would have thought the supplemental register hurts you, that presumptively they refused to find it distinctive, which is why it's on the supplemental as opposed to the main register. There is, however, Your Honor, a provision that presumes after five years of continuous use that a supplemental registration can be brought over to the principal registration. It never was, was it? It never was, correct, Your Honor. The reason for that was that at the time that the five years came up, it was originally on the supplemental register in 1999. Things with Knox County were going relatively well. In fact, at various points, Knox County had recognized that, yes, Faradona Communications was the proper owner of that trademark. Essentially, he didn't do it because he thought that the most likely person to come in and infringe upon his mark was actually endorsing him. He had that in various forms of writing, and it is also in several of the affidavits. I believe the Sam Shedden affidavit and the Susan Cafferty affidavit. There was also an exchange over schoolcoupons.org when at one point a Knox County employee went about and registered that. Faradona sent them a cease and desist, and when that happened, Knox County backed down. So all of these things demonstrated to Faradona at the time that they had the superior position over and against Knox County. Unfortunate as it may be, I'd love to be here now on the principal register, Your Honor, but it was essentially a business decision based on the sense that he got from Knox County that he was in position. I would ask you to find essentially an estoppel argument that Knox County, having acquiesced to him before as being in the senior position, cannot now come, now that they're in litigation, and suggest that they are somehow in a senior position or that the mark is indefensible. There are writings in that February 5, 2010 letter, that February 6, 2010 draft letter, where Scott Bacon, who had authority over the program from Knox County's perspective, in writing, without solicitation, says that Faradona owns this particular trademark. But don't you have to show secondary meaning? Isn't that a concept of trademark law, where you don't have an absolutely unique mark, but just a descriptive one? It certainly is, Your Honor, and there are different applications for both trademark and trade dress. On trade dress, there's actually an additional distinction based on the 2 pesos case, in which there is the possibility for inherent distinctiveness, which does not even necessarily require secondary meaning. Now, there's a little bit of back and forth on that through the Amber Crombie case, but I would suggest here that you can look visually at the coupon books and definitely tell what the particular branding is for school coupons. But you don't have any consumer survey, do you, to prove secondary? No, we do not, Your Honor. And again, of course, this is partly because leading up to the case and until things went south, Faradona believed that it was in the superior position. Now, having been infringed upon, essentially Faradona is bankrupt. Are you infringed upon or have you just got competition? You lost the contract. Well, they lost the contract, but the problem, Your Honor, is that outside of Knox County, there are several other surrounding counties that Faradona sold into, for example, Oak Ridge and Anderson County, Sevier County as well, down by Gatlinburg Pigeon Forge. The problem is that once Knox County, which is the dominant county within that region, pulled the plug and then started selling into those other counties by approaching directly principals in Anderson County and Sevier County, what you then had was basically the business of Faradona evaporating because not only had he lost that contract, but they were expanding with the benefit of taxpayer dollars into other markets that they had not previously been in. So how does that work when Knox County goes into another school outside of Knox County? Who gets the money when the Sevier County housewife buys one of these booklets? Certainly, it's a split. And what happens, it's a $10 booklet. So when Little Susie comes to your door, Your Honor, you pay her $10 to get the book. Little Susie goes to Sevier County High School. Yes, Your Honor. She takes that $10 back to Sevier County High School. Very true. And what happens is that then that $10 is split where roughly perhaps maybe $2 might stay at the local school, $5 might stay within Sevier County, or additional monies might then be forwarded back to Knox County. They pay Knox County? Knox County actually received payment from the schools in Anderson County and Sevier County and so forth when those outside of Knox County schools started selling the books. Yes, Your Honor. And who was confused when that happened? The merchants were confused. They didn't know what they were doing with what was going on. The parents that were buying books didn't know what was going on. There were, in fact, several newspaper articles in the Knoxville News Sentinel. There was even a news broadcast on WATE-TV in which they covered Knox County's campaign by using footage of Faradana's booklet. Okay. Thank you. Thank you very much, Your Honor. Good morning. May it please the Court. I'm Emily Taylor, here today from the Knox County, Tennessee, Bar, representing Knox County Schools and Knox County, Tennessee. And I just want to address a few of the points briefly made by the appellant. There's reference today and reference in the record or in his briefs to a news report in which the media showed a copy of appellant's coupon book when discussing the Knox County coupon book, and the district court actually excluded that news report from the record, which is why if you try to find that video, you won't be able to locate it. Appellant discussed Knox County selling coupon books to outside counties. Actually, the record will show that all Knox County did was take its excess inventory after it had already finished its campaign, and it would offer those excess coupon books to the surrounding community. Which means that when their kids sold them, they would get all the money. I believe Knox County still got a small portion of that, the fee of the book, and that was just to handle Knox County's administrative expenses in running its program. So if the coupon book sold for $10, the school probably got to keep, the Sevier County school, using your example from earlier, Sevier County probably got to keep $8, and then Knox County might have kept the other two to cover the printing and the binding of the coupon books and things like that. But, again, that was only after Knox County had already finished its own campaign. It wasn't done to expand Knox County's presence in the market. It was merely done to get these books off our hands that we can't use next year because they say 2010-2011. One of the first questions your Honors had for the Appellant was regarding confusion. Where's the confusion? Where's the confusion? And that's the same point we make in our briefs. Appellants have come forward with no evidence showing that the actual end-user consumers were confused by the existence of Knox County schools. The argument today is that the merchants are confused. He's come forward with minimal evidence of perhaps one merchant who might have been confused, but I believe there's case law stating that minimal instances of confusion, one or two here and there, is not the type needed to meet your burden of showing confusion. And, again, to the extent any confusion did exist, that was at the very beginning of the split when Knox County took the program back in-house and began doing it themselves. And that's why Knox County took the steps to do things like saying we are rebranding. They actively wanted to prevent confusion in the marketplace, so they put out a couple of press releases saying, you know, we're rebranding. This is our book. There's going to be another book on the marketplace. Just be aware of the difference between the two books. And then a few more facts that the appellant didn't mention is that Knox County actually started its coupon book program in 1989. Mr. Ward, the principal of Faradona, testified in his deposition that he was not in the coupon book business in 1989. He had nothing to do with the first coupon books produced by Knox County in 1989. And Mr. Ward also conceded that Knox County used the name School Coupons before him. For its 1993-1994 coupon book, Knox County called the program School Coupons. There's documents in the record, letters in the record, that Knox County sent out that said we're about to kick off our new campaign. This year it will be called School Coupons. It wasn't until the following year that Knox County put out a bid for printing of the coupon books. Faradona placed a bid, was awarded the contract, and at that point Mr. Ward testifies that he began using the mark School Coupons. So, again, that was one year after Knox County had already introduced that on its own before any involvement from Mr. Ward. Do all the merchants who might be confused get the letters about rebranding? That letter would have gone out in 2010, after the contract expired with Mr. Ward at the end of the 2009 campaign. I believe that letter would have gone out to every merchant that participated in the program the following year. And, again, not only did the letters go out saying we're rebranding, but before Knox County kicked off their campaign, they did put some news releases in the media saying, get ready for the new coupon book campaign. This year it will be called this because we are rebranding. And in Knox County, the coupon book campaign for the school system, I can't emphasize this enough, is a big deal. The county spends a lot of time getting ready for the program, and the kickoff, it really is a celebration. They have one school that's like the lead school, and they have a big party that day, and the teachers dress up in costumes. So the community is very aware of when the… What's the city in Knox County? Knoxville. Does Knox County claim to be the senior user of the school coupons, Mark? To the extent Mr. Ward or the plaintiffs claim that they have priority to the name over us, we do. The record is pretty clear that in 1993, for the 1993-1994 campaign, Knox County rebranded from… The year before that, the campaign was class coupons. Knox County took the program back in-house and rebranded it to school coupons. And plaintiffs spend a lot of time making the argument that, well, they never contested our registration of the trademark. Well, it was our position that we didn't have to. We were using it first, so if he wants to go out and register it, that does not restrict our rights as a senior existing user as the date of his registration. And also, in his registration for the supplemental register, he has to state the date he first used the mark, and the date identified in that filing is, I believe, February 12, 1994. So in that filing itself, Faradana appears to concede that Knox County used it first because we used it for the 1993 campaign. Well, do we need to decide that issue of who's a senior user in your favor in order for you to prevail? I don't think so because, as we set out in our briefs, the record's pretty clear that not only did plaintiffs not meet their burden of showing secondary meaning, but even if they had met their burden of showing secondary meaning, they still have to show a likelihood of confusion, and there's simply nothing in the record that shows confusion. They didn't do any consumer surveys. They didn't do any consumer polling. We don't have any consumer testimony. All we really have are plaintiffs' own self-serving statements that, well, we used the mark for X number of years, and you didn't contest it. Therefore, we now get a monopoly on coupon books in Knox County. Like I said, Knox County's been doing a coupon book fundraiser since 1989, and it's had a lot of success. And at one point, plaintiffs were involved with the program, but, you know, we're a county. We can't just give you a contract indefinitely. It has to be rebid pursuant to the guidelines. And so when a plaintiff's contract expired, it was rebid, and they weren't the low bid, so they went with a different printer. Let's look at some other points. Questions were asked about distinctiveness, particularly with the trade dress claim, and I also would like to point out that, you know, trade dress isn't distinctive just because the plaintiffs say it is. You have to identify specific elements of your dress that lead the public to identify your product. And in our case, evidence of that just doesn't exist. The trade dress features that plaintiffs rely on in this case all exist to make the book more useful or appealing. You know, things like colors and pictures, all they're really there to do is to make the book look more appealing. The majority of the cited trade dress elements are functional. The size of the book, for example, serves a function. You also have to show that the trade dress, like I said, is nonfunctional, and, for example, the picture of the student on the front cover, well, that serves a function. It rewards the top seller of the coupon books for that year. So I believe that the district court correctly determined that plaintiffs had not stated a claim for trade dress infringement. The plaintiffs also state a weak claim for copyright infringement. Plaintiffs' own expert stated that plaintiffs could not state a claim for copyright infringement because there's too many differences and not enough similarities between the two marks. The district court said plaintiffs haven't stated a claim for copyright infringement. We obviously agree with, in that instance, with plaintiffs' own expert's opinion that there's not a claim for copyright infringement. So, simply put, this is one of those cases that we clearly feel never should have been filed. Knox County enjoyed working with the plaintiffs over a number of years, but his contract expired. It was rebid, and he was not the lowest bidder. Like I've said a few times, Knox County's been producing a coupon book since 1989, which, even as the plaintiff himself testified, was long before he entered the coupon book scene. What activity did he perform? I mean, he was the printer, right? He was the printer and binder and packager and delivered them to the schools, but was he also someone who was out there negotiating for the First American Bank, for instance, to put their coupon in there? Well, he himself is actually not a, he doesn't have printing materials. He's kind of like a middleman. He outsources all that to various, and puts it all together, which is why Knox County figured out. If they put it together, what do you mean? He gets the different element. He arranges the print. As I understand it, you print it somewhere, and then you might bind it somewhere else, and da-da-da-da-da. All right. But he doesn't own any of that. He's a middleman. Knox County figured out, wow, we can save a lot of money by not having a middleman. Too bad they didn't figure it out a little sooner. A middleman who's basically producing the books. Right, right. Not a middleman who's deciding what goes in the books, or it is. You mean deciding? I understand deciding because he helps, whatever it is, put the various elements onto a particular coupon. Going off of what's in the record, Mr. Ward testified that Knox County was responsible for handling stuff within local recruitment. Mr. Ward, because he had this vision of creating this national company, he wanted to go out there and get national companies and big-time people to advertise in the book. Would that increase his compensation, or is he just getting a per-book kind of compensation, or that's not in the record? That would increase it because he's doing a million of them instead of a thousand of them, but it's basically production compensation. Or is it like a PR firm? I believe he was paid a percentage of each book sold. So each book sold. So he might have gotten $0.10 per book. But none of that was actually built into the contract between Knox County and Faradona. Those contracts are in the record, and those contracts specify that he is being contracted to handle the printing of the Knox County Schools coupon book. He might have done additional things on the side because he was trying to get this thing to go nationwide. I'm not sure my questions go to the issues. I'm just trying to get a feel for what's going on. I understand. Now I lost my train of thought. But basically, Knox County has created a system-wide fundraiser that they are very proud of. It's been enormously successful before, during, and after plaintiff's involvement. We believe it's going to continue to be successful even without plaintiffs. So on behalf of Knox County and the thousands of happy school children that get so excited every year to sell coupon books, we ask that the district court's opinion be affirmed. Thank you. Thank you. Your Honors, may it please the Court, very briefly, 1989 doesn't matter. I'm not saying that Knox County can't sell school coupons. I'm merely saying that they can't use it with the marks and the trade dress that Faradona is using. The 1993 book was not called School Coupons. It was actually called Head of the Class. It's the 1994 book that is first actually titled School Coupons, and that was the one that involved Faradona Communications. And that's the issue. I'm sorry if my questions got you off the issue. No problem, Your Honor. What parts of the so-called infringing works are not functional? And I just got it right in front of me. Certainly. There are different types of functionality. There's essentially a de facto functionality versus a de jure functionality. Essentially it gets into does the article accomplish its mission, but also the de jure is more of a if there is a particular commercial advantage that makes something necessary. The great example for the Sixth Circuit is the traffics case involving a spring on traffic signs. When you look at the front cover of a School Coupons book, the graphic design there, I would say that none of that is actually functional. There is no necessary non-reputational commercial advantage that is given off by that branding. All of the advantage to that branding is reputational oriented. It's the trade dress of the good. It allows the user to know who the source of that book is. And there's a very big distinction. I don't even understand how you think the graphics are that similar. The graphics are actually quite similar in terms of the theme and the overall impression that it gives. And the best way to pick that up, Your Honor, is to view that in contrast with the other books. For example, The Kids Count, Kids First, and so forth. And you can see that School Coupons and the Knox County's book are much more of the same genus, as opposed to all of the other types of coupon books that are out there. Some are of the Slim Jim style. Others look like oversized library books. There are literally millions of ways to do a coupon book, and it just so happened that Knox County decided to do the way that Mr. Ward and the appellants were doing. Why? Because there was a commercial, valuable reason to do so. He built up the customers, and they stole them. That's why we're asking, Your Honors, to reverse the decision of the District Court and to, at a minimum, give us a remand for trial, but ideally a full-blown reversal, and find in our favor on our motions for summary judgment. Thank you, Counsel. Thank you very much, Your Honors.